UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| CRYSTAL NORTON, | ) |
| | ) |
| PLAINTIFF, | ) CASE NO.:_____ |
| | ) |
| v. | ) |
| | ) COMPLAINT |
| | ) |
| CITY OF SOMERSET, KENTUCKY, | ) |
| And MAYOR EDDIE GIRDLER, | ) (JURY TRIAL DEMANDED) |
| In his Individual and official capacity, | ) |
| | ) |
| DEFENDANTS. | ) |

COMES NOW, Plaintiff, Mrs. Crystal Norton, (hereinafter referred to as "Plaintiff" or "Mrs. Norton", by and through undersigned counsel, Mr. Robert E. Norfleet, and states the following causes of action against the City of Somerset (hereinafter referred to as the "the city") and Somerset City Mayor, Mr. Eddie Girdler (hereinafter referred to as "Mayor").

### INTRODUCTION

1. This is an action arising under 42 U.S.C. § 1983, First and Fourteenth Amendments of the United States Constitution, and Kentucky state law for wrongful discharge and/or retaliation.

2. Defendants violated Plaintiff's civil rights when the Mayor terminated Plaintiff's employment as a paramedic for the city of Somerset because Plaintiff engaged in speech critical of the Mayor's handling of an issue of public concern in advance of an election. As direct

consequence, Plaintiff also subsequently suffered the indignity of being relieved of her duties as a volunteer for the Somerset City Fire Department by order of the Fire Chief, Tyler Jasper, who also happens to be a family member of the Mayor.

## JURISDICTION

3. This Court has jurisdiction of this case under 42. U.S.C. § 1983, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims set forth in this Complaint under 28 U.S.C. § 1367.

4. Venue is established in this judicial district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 1983.

## PARTIES

5. Plaintiff is a resident and citizen of Pulaski County, Kentucky, and the United States.

6. At all times relevant hereto, Defendant city of Somerset was a municipality and a political subdivision of the Commonwealth of Kentucky with its administrative offices located at 400 East Mt. Vernon Street, Somerset, Kentucky, 42501.

7. At all times relevant hereto, Defendant Mayor Eddie Girdler was the Mayor for the city of Somerset, and an employee, agent, and/or servant of the city of Somerset. The Mayor is a resident and citizen of Pulaski County, Kentucky. The Mayor is sued in his individual and official capacity. Per KRS § 83A.180 and KRS § 83A.130 the Mayor is the chief executive and administrative officer of the city and the Mayor has the sole authority to supervise the day-to-day operations of the city and the conduct of all city officers and employees. The Mayor fired Plaintiff for comments on her facebook page which the Mayor objected to and which opposed, or he perceived as not supporting, his bid for reelection as mayor in the upcoming election.

Specifically, the comments were critical of the Mayor's handling of a condemnation/nuisance abatement issue, wherein it is believed that the city and the Mayor fabricated circumstances enabling them to destroy the home of a retired city firefighter, Mr. William Bill Roberts (hereinafter "Mr. Roberts"), including taking the retired city firefighter into custody for a mental health evaluation and, after Mr. Robert's was determined to be mentally healthy, arresting him on bogus charges, and hoping for a more Godly person being elected as mayor.

## FACTS

8. Plaintiff first began working for the city of Somerset on or about September 2012, as a part-time ambulance paramedic for the Somerset City Emergency Medical Services (hereinafter referred to as "EMS") department. EMS department representatives interviewed and ultimately hired Plaintiff.

9. Plaintiff remained part-time until a full-time ambulance paramedic position became available on or about July 2014. Plaintiff was lowest ranking member of EMS. At no time during her part-time employment or the roughly three (3) months of full-time employment at EMS did Plaintiff's duties include any policy making authority, or other managerial and/or supervisory authority.

10. Throughout her tenure with EMS, Plaintiff performed all of her duties and responsibilities as a paramedic in a satisfactory manner and received no disciplinary or other corrective actions with respect to the performance of her responsibilities and duties as a paramedic.

11. As a paramedic, Plaintiff also served as a volunteer for the Somerset City Fire Department.

12. During the midst of a heated mayor election between the Mayor and his opponent, Alan Keck, the city and the Mayor razed the residence and childhood home of a retired firefighter, Mr. William Bill Roberts, on or about September 19, 2014.

13. In connection with efforts to raze Mr. Robert's home, the Mayor and the city successfully undertook efforts to have Mr. Roberts detained for a mental health evaluation.

14. After mental health officials declared Mr. Roberts mentally competent, the city and the Mayor successfully undertook steps to have Mr. Robert's removed from his home a second time by arresting him for alleged conduct occurring prior to his being detained for the mental health evaluation.

15. While the police had Mr. Roberts in custody at the Pulaski County Detention Center, the city and the Mayor razed Mr. Roberts' residence and childhood home.

16. The conduct by the city and the Mayor regarding Mr. Roberts and the destruction of his childhood home ignited an almost immediate public outrage and was the main headline the next day, Saturday's, September 20, 2014, in the local newspaper, The Commonwealth Journal. See September 20, 2014, article from The Commonwealth Journal attached herein as Exhibit A.

17. It was widely rumored across Somerset that Doug Nelson, the Chief of Police for the Somerset City Police Department, had a heated disagreement with the Mayor regarding the Mayor's sudden obsession with razing Mr. Roberts' home and the legality of the same. It is believed and was reported, but not confirmed, by The Commonwealth Journal, that the Mayor fired and then rehired Police Chief Doug Nelson on September 19, 2014, for allegedly refusing to carry out the illegal directives of the Mayor. Much of the outrage stemmed from a belief that the Mayor's sudden obsession with destroying Mr. Roberts home resulted from the Mayor's desire to curry political favor and capital with certain voters. The speculation concerning the

Mayor's motives stemmed in part from the Mayor's sudden overt public claims that he acted because Mr. Roberts' home presented a "danger" to the community, even though the condition of the home had remained unchanged since at least 2011.

18. Following publication of the article by the Commonwealth Journal, and as more facts came to light over that weekend, what was viewed as the illegal razing of Mr. Roberts' residence and childhood home by the Mayor political reasons became the talk of the town.

19. Plaintiff was off duty from EMS on Monday, September 22, 2014.

20. While at her home that day, Plaintiff shared the Commonwealth Journal's news story from September 20, 2014, on facebook regarding the razing of Mr. Roberts' residence and his childhood home, and posted the following comment to the article regarding her personal opinion of how the city and the Mayor handled the situation:

> "This is absolutely unbelievable! The worst part is I can't believe people are standing behind our crooked mayor still! I don't care the condition of his home you HAVE to give him a written notice and a date to be out by, not just black ball him and throw him into jail and then tear his home down while you conveniently have him locked up. There was a better way to go about this…I hope he throws the kitchen sink at the mayor and everyone involved for such a dirty move! Such a shame, I didn't know somerset [sic] was that crooked! Sure hope we get a good, Godly mayor in jan [sic] to take this city upward and out of the sewers!"

See Plaintiff's facebook post attached hereto as Exhibit B.

21. Plaintiff made the post regarding the Mayor's conduct to facebook using a personal device.

22. Plaintiff was off duty from EMS on Tuesday, September 23, 2014.

23. That morning, Plaintiff received instructions that the Mayor wanted to see her and she was ordered to report to the Mayor's office that same afternoon.

24. Upon arriving, Plaintiff was immediately escorted to the Mayor's office. The following individuals already were present in the Mayor's office: who Plaintiff believes to be Somerset City Attorney, Carrie Wiese; the human resource director for the city, Michelle King, who had directed Plaintiff to come to the Mayor's office; and the EMS chief, Billy Duncan.

25. Having never previously met Plaintiff, the Mayor introduced himself to Plaintiff.

26. Immediately thereafter, the Mayor made clear he had been summoned Plaintiff to his office on her day off solely due to her facebook post the previous day regarding the razing of Mr. Robert's property. The Mayor told Plaintiff that her posting was a violation of official city policy; specifically citing to the city's social media policy.

27. In an effort to intimidate and otherwise personally attack Plaintiff, the Mayor then went on a tirade about her post being critical of his conduct concerning Mr. Robert's and his perception that she was telling voters that the Mayor was not "Godly" enough to be reelected as Mayor.

28. The Mayor told Plaintiff that she knew "nothing about the government matters" she commented on regarding the Roberts' matter and lectured her that "Christians do not attack other Christians" like she did.

29. In an effort by the Mayor to further threaten and intimidate the Plaintiff, the Mayor claimed Plaintiff's comments could result in him filing a slander lawsuit against Plaintiff, thereby furthering frightening the Plaintiff.

30. The Mayor further stated that calling him a crook was equivalent to calling everyone else working for the city a crook because he had to work through the council and department heads to get anything done. The Mayor's statement made no logical sense to Plaintiff.

31. The Mayor concluded the roughly ten (10) minute meeting by informing Plaintiff that he was terminating her employment effective immediately. He ended by telling Plaintiff in a smug and contemptuous tone, "Have a good day!"

32. The Mayor is the only person who spoke during the termination meeting. Subsequently, thereafter EMS Chief, Mr. Billy Duncan, instructed the Plaintiff to turn over her paramedic gear within 24 hours.

33. The Mayor's conduct towards Mr. Roberts was of such a substantial magnitude of public concern that the Mayor himself felt compelled to go onto social media to attempt to politically spin the collective negative outrage the community felt regarding his conduct. The Mayor used the social media platform to make negative personal judgments about Mr. Roberts, his standard of living, and to make demonstrably false statements relating to the razing of Mr. Roberts' residence and childhood home in an attempt to justify his conduct. See Mayor's facebook post attached herein as Exhibit C.

34. A couple of days after the termination meeting, Mike Phelps, from the Somerset City Fire Department, contacted Plaintiff and informed her that the Somerset Fire Department Chief, Tyler Jasper, who also happens to be a relative of the Mayor, had ordered Mr. Phelps to contact Plaintiff and instruct her to return her Somerset City Fire Department gear immediately, which she did.

35. Because of the conduct of the Defendants, individually and collectively, Plaintiff's damages include, but are not limited to, past and future lost wages and benefits, pain and suffering, humiliation and emotional distress, attorney fees, etc.

## COUNTS 1-3

## FIRST AMENDMENT RETALIATION

## PROTECTED SPEECH RETALIATION

## POLITICAL AFFILIATION RETALIATION

## 42 U.S.C. § 1983

36. All prior and subsequent paragraphs in this Complaint are hereby incorporated in Count I as if fully set forth and pled herein.

37. The Plaintiff engaged in constitutionally protected speech and/or conduct protected by the First Amendment when she posted comments to facebook regarding the city and Mayor's handling of the Robert's property and commenting about her hopes for the upcoming election.

38. As a direct result of Plaintiff engaging in constitutionally protected speech and/or conduct, she suffered an adverse employment action when the city and Mayor terminated her employment as a paramedic for the city.

39. The Mayor expressly told Plaintiff the city maintained an official policy prohibiting the comments she made on facebook post earlier that day, and that she was being fired effective immediately for the comments she made on her facebook post earlier that day.

40. But for the Plaintiff's comments contained in her facebook post criticizing the Mayor's and city's actions regarding Mr. Roberts' arrest and their razing of Mr. Roberts' residence and childhood home, as well as Plaintiff's comments concerning the upcoming election, Plaintiff would not have been terminated from her position as a paramedic for the city of Somerset.

41. The Plaintiff's facebook comments are protected speech, which touch on an issue of public concern, that being the city and the Mayor having Mr. Roberts' arrested and razing his residence and childhood home during Mr. Roberts' incarceration at the Pulaski County Detention Center, rather than the Mayor and the City following the law and ordinances regarding the city's right to condemn and/or abate nuisances.

42. Plaintiff's protected speech in no way referred to or affected her employment with the city and/or impaired the city, the Mayor, or any other supervisor's ability to perform their duties.

43. The Mayor and the city perceived the Plaintiff to be opposed to the Mayor's reelection bid or otherwise politically affiliated with the Mayor's opponent in the upcoming November 4, 2014, Somerset mayoral election, Mr. Alan Keck, and, as a result, terminated the Plaintiff's employment with the city.

44. Because of the misconduct by the city and the Mayor, as set forth above, the Defendants engaged in first amendment retaliation, protected speech retaliation, and political affiliation retaliation.

45. Plaintiff has been damaged as a direct and proximate result of the Defendants' unlawful retaliation, including but not limited to past and future lost wages and benefits, pain and suffering, emotional distress and humiliation, attorney fees, etc.

## COUNT 4

### WRONGFUL DISCHARGE & RETALIATION

### UNDER LAWS OF THE COMMONWEALTH OF KENTUCKY

46. All prior and subsequent paragraphs in this Complaint are hereby incorporated in Count 4 as if fully set forth and pled herein.

47. Plaintiff was unlawfully discharged from her employment by the city and the Mayor when she exercised her rights 1st Amendment of the United States and guaranteed by 42 U.S.C. § 1983 when Plaintiff was unlawfully terminated as a direct result of the criticizing the city and the Mayor on facebook for having Mr. Roberts arrested and then razing Mr. Roberts' residence and childhood home while he was incarcerated at the Pulaski County Detention Center.

48. Plaintiff was unlawfully discharged as the result of engaging in fundamental and well-defined policies evidenced by existing law.

49. The fundamental and well-defined policies that protected the Plaintiff's criticisms of the Mayor and the city are clearly set forth in existing federal law, including but not limited to the 1st Amendment of the United States Constitution, 42 U.S.C. § 1983, and other existing federal laws.

50. As a result of Plaintiff exercising the rights and the protections of fundamental and well-defined as set forth in and guaranteed to Plaintiff by the 1st Amendment of the United States Constitution, 42 U.S.C. § 1983, and other existing federal laws the Mayor and the city unlawfully fired the Plaintiff, which is direct violation of the laws of the Commonwealth.

51. Plaintiff has been damaged as a direct and proximate result of the Defendants' wrongful discharge and retaliation, including but not limited to past and future lost wages and benefits, pain and suffering, emotional distress and humiliation, attorney fees, etc.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a trial by jury on all counts pled in this Complaint and further prays:

52. For a judgment in Plaintiff's favor on all counts pled in this Complaint.

53. For issuance of an order enjoining Defendants from violating Plaintiff's First Amendment rights and/or retaliating against Plaintiff in the future for lawfully exercising those rights.

54. That Defendant City of Somerset's official social media policy, as written and applied, be held unconstitutional to the extent it overreaches and deprives employees of the City of Somerset their right to engage in protected free speech as guaranteed through the First and Fourteenth Amendments to the Constitution.

55. That Plaintiff be awarded damages and other remedies as permitted under the applicable law, including without limitation:

(a) Reinstatement of her employment by the city of Somerset to her prior position as a paramedic under substantially the same terms and conditions as if she had never been unlawfully terminated;

(b) Payment for all lost wages and the values of lost benefits from the date of her unlawful termination to the date of reinstatement, and, in the event reinstatement is determined to be unreasonable under the circumstances, she be awarded an amount for future lost wages and all lost benefits; and,

(c) Damages for pain and suffering and humiliation and emotional distress inflicted upon Plaintiff as a result of the illegal conduct of the Defendants to the extent permitted by law.

56. A jury trial on all counts asserted in this Complaint.

57. That Defendants be required to pay Plaintiff's attorney fees.

58. That Plaintiff be awarded pre- and post judgment interest as provided by law.

59. That the costs of this action be paid by Defendants.

60. Such other and further relief as allowed by law.

Respectfully submitted,

_____
ROBERT E. NORFLEET
Robert E. Norfleet Law Office, PLLC.
313 West Mt. Vernon Street
Somerset, Kentucky 42501
Phone: (606) 679-1550
Fax: (606) 679-1513
norfleetlawfirm@aol.com
*Attorney for Plaintiff*

## VERIFICATION OF COMPLAINT

I, CRYSTAL NORTON, the Plaintiff named in this lawsuit, and after being placed under oath and duly sworn, hereby swears, affirms, and verifies that all of the averments set forth in this Complaint are true and correct to the best of my knowledge and belief.

This 30 day of October, 2014.

_____
CRYSTAL NORTON
*PLAINTIFF*

STATE OF KENTUCKY
COUNTY OF PULASKI…SCT:

Acknowledged, subscribed, and sworn to before me by Respondent, CRYSTAL NORTON, this 30 day of October, 2014.

_____
NOTARY PUBLIC, STATE AT LARGE, KY.

My Commission Expires: 11/26/2017

ANN RENEE KEITH
NOTARY PUBLIC
STATE AT LARGE, KENTUCKY
MY COMMISSION EXPIRES 11/26/17
Pulaski COUNTY